UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: APR 1 4 2015

Brian Hidalgo,

           Plaintiff,

–v–

City of New York, et al.,

           Defendants.

14-cv-2282 (AJN)

MEMORANDUM & ORDER

ALISON J. NATHAN, District Judge:

    This is a slip-and-fall case presently before the Court on diversity jurisdiction. Defendant HP Creston Housing Development Fund Co. ("HP Creston") removed the case from New York Supreme Court, Bronx County on April 1, 2014. *See* Dkt. No. 2. Plaintiff Brian Hidalgo ("Hidalgo") now moves to remand the case back to the state court. For the following reasons, Hidalgo's motion is GRANTED.

### I. BACKGROUND

    Between February 2012 and March 3, 2013, Hidalgo resided at 271 Goldsmith Avenue, Apt. 232, Newark, New Jersey ("271 Goldsmith Avenue"). In early March 2013, Hidalgo began temporarily staying with his cousin Carlos Jordan, who then resided at 2333 Creston Avenue, Bronx, New York ("2333 Creston Avenue"). On or about March 7, 2013, Hidalgo slipped and fell on the exterior steps of 2333 Creston Avenue, sustaining severe injuries and giving rise to this action. *See* Pl.'s Ex. M ¶ 63. Shortly thereafter, on or about April 1, 2013, Hidalgo moved in with his Aunt at 337 East 112th Street, Apt. 1B, New York, New York ("337 East 112th Street").

The parties do not dispute these facts, but do dispute whether they represent a legal change in Hidalgo's domicile, which is the determinative consideration in assessing whether the Court may exercise diversity jurisdiction over this case.

## II.     LEGAL STANDARD

The federal diversity jurisdiction statute provides that district courts shall, *inter alia*, have jurisdiction over cases arising between "citizens of different States." 28 U.S.C. § 1332(a)(1). "For purposes of diversity jurisdiction, a natural person's citizenship is determined by domicile." *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1227 (S.D.N.Y. 1991). *See also Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998). Determining a person's domicile is a mixed question of law and fact reserved for the Court. *See Weaving*, 769 F. Supp. at 1228 (citing *Katz v. Goodyear Tire and Rubber Co.*, 737 F.2d 238, 742 n.2 (2d Cir. 1984)). *See also Palazzo ex. Rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). Although Hidalgo is the movant, the burden is on HP Creston, the party seeking to invoke federal jurisdiction, to demonstrate that diversity exists. *See Weaving*, 769 F. Supp. at 1228.

Domicile is not synonymous with residence and a party can reside in one place, yet be domiciled in another. *See Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 47-49 (1989). Instead, domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Corio*, 232 F.3d at 42 (citing *Linardos*, 157 F.3d at 948). A person is born with a particular domicile and is presumed to retain it unless it can be shown that she has established a new domicile. *See Weaving*, 769 F. Supp. at 1228. In order to change domicile, "two things are indispensable: First, residence in a new domicil; and, second, the intention to remain there. The change cannot be made, except *facto et animo*. Both are alike necessary. Either without the other is

2

insufficient." *Lindaros*, 157 F.3d at 948 (quoting *Sun Printing & Publishing Ass'n v. Edwards*, 194 U.S. 377, 383 (1904)). *See also Mississippi Band of Choctaw Indians*, 490 U.S. at 48 ("domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there."); *accord* 13E Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3613 (3rd ed. 2009) ("Wright & Miller").

There is no minimum period necessary to establish domicile. *See Weaving*, 769 F. Supp. at 1227. *See also* Wright & Miller § 3613 ("Any person *sui juris* may acquire a new domicile at any time and for any reason . . . No minimum residence period is required to effect a change for the purpose of determining diversity of citizenship jurisdiction.") Similarly, although intent to remain in the state is a key element of demonstrating a change of domicile, the person need not have the affirmative intent to remain there permanently. Rather, they must have no present intention to move to another state. *See Weaving*, 769 F. Supp. at 1227. *See also* Wright & Miller § 3613 ("But a litigant is not required to state—or even have—an intention to stay permanently at the new residence. Such a demanding requirement would prevent a significant portion of our mobile population from acquiring a new domicile. It is sufficient if the individual intends to remain at the new home for an indefinite period into the future.")

Courts take into account a number of factors when considering where a person is domiciled, including a party's "current residence, voting registration, driver's license and automobile registration, location of brokerage and bank accounts, members in fraternal organizations, churches, and other associations, places of employment or business, and payment of taxes." *Kennedy v. Trustees of Testamentary Trust of Will of Kennedy*, 633 F. Supp. 2d 77, 81 (S.D.N.Y. 2009) *aff'd*, 406 F. App'x 507 (2d Cir. 2010) (quoting *Bank of India v. Subramanian*, 06-cv-2026 (WHP), 2007 WL 1424668, at *3 (S.D.N.Y. May 15, 2007)). No single factor

predominates and the Court must consider the totality of the circumstances. *Id.* (citing *Weaving*, 769 F. Supp. at 1228).

### III.   DISCUSSION

The sole question before the Court is where Hidalgo was domiciled on November 8, 2013, the day he initiated this suit in New York Supreme Court. Hidalgo and HP Creston each put forward evidence that, they contend, purports to show that Hidalgo was domiciled in either New York or New Jersey, respectively.

HP Creston notes a number of documents listing Hidalgo's address as 271 Goldsmith Avenue. The first is a discharge form from St. Barnabas Hospital relating to the March 6, 2013 hospital visit stemming from Hidalgo's slip-and-fall. The form lists Hidalgo's address as "271 GOLDSMITH AVE #23. . NEWARK, New Jersey, 07112." *See* Declaration of Luis F. Ras ("Ras Decl."), Ex. D at 1. Second, HP Creston puts forward a pair of New York Fire Department ("FDNY") Ambulance Call Reports, dated March 6, 2013 and March 7, 2013, respectively, describing ambulance calls to assist Hidalgo at 2333 Creston Avenue in the Bronx. Both reports list Hidalgo's address as 271 Goldsmith Avenue. *See id.* at 2-6. Third, HP Creston highlights Hidalgo's possession of a New Jersey State Identification Card, issued on February 4, 2013, which similarly lists Hidalgo's residence as 271 Goldsmith Avenue. *See* Pl.'s Ex. J. Additionally, in his deposition testimony, Hidalgo acknowledged that he leased an apartment at 271 Goldsmith Avenue in Newark for one year, from February 2013 through early March 2013, and further that this was the only lease he had ever had for an apartment. *See* Pl.'s Ex. B ("Hidalgo Dep.") 12:7-10, 16:19–17:1.

This evidence certainly tends to suggest that Hidalgo was residing in New Jersey as of early March 2013, around the time the slip-and-fall occurred. However, a Plaintiff's residence or

4

domicile at the time of the events giving rise to a cause of action is not the determinative consideration in assessing whether diversity jurisdiction exists. Rather, the "relevant date is that on which the complaint is filed." *Hakkila v. Consol. Edison Co. of New York*, 745 F. Supp. 988, 990 (S.D.N.Y. 1990) (citing *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 163 (2d Cir. 1966)). The remaining evidence, including documents more contemporaneous with the filing of this action, demonstrate that Hidalgo both moved his residence to New York and manifested an intent to remain there indefinitely, thus effecting a change in domicile.

As an initial matter, it bears noting that Hidalgo was born in New York in 1987. *See* Hidalgo Dep. 20:11-13. Accordingly, his first domicile was New York. *See Weaving*, 769 F. Supp. at 1228. Prior to moving to New Jersey for one year, between February 2012 and March 2013, Hidalgo was also living in New York with his Aunt at the 337 112th Street Apartment. *Id.* 12:15-21. Hidalgo moved to Newark for one year in part because his employer, an inventory company, had reassigned him to a warehouse in New Jersey. *Id.* 17:20–18:4. When his lease ended, Hidalgo did not renew it because his employer was transferring him back to New York. *Id.* 17:20–18:4, 23:23–25:2. Accordingly, on March 3, 2013, Hidalgo moved all of his belongings into a Cube Smart storage facility that he rented in the Bronx. *Id.* 6:7-12, 8:16-25.

At his deposition, Hidalgo explained that he spent the remainder of March 2013 living with his cousin at 2333 Cresson Avenue in the Bronx. *Id.* 35:13-17. Hidalgo stated that this was a temporary arrangement while he relocated from New Jersey to New York. *Id.* During this period, Hidalgo moved all of his possessions from the storage facility into his Aunt's apartment on 112th Street, save for his television, which he gifted to his cousin. *Id.* 45:19-22. According to Hidalgo, he has been residing at his Aunt's apartment on 112th Street continuously since April

1, 2013. *Id.* 5:15-20. Hidalgo has therefore been a resident of New York since at least April 1, 2013, establishing the first prong of domicile.

Moreover, Hidalgo's testimony revealed an intention to remain indefinitely within New York, if not necessarily at his Aunt's apartment. He stated in his deposition that he is lodging in his Aunt's living room. *Id.* at 14:14-18. When asked if he was seeking alternative living arrangements, Hidalgo stated, "Yes, of course. I was actually, well, I was actually just waiting to heal up to get my second job, which would give me the proper income *to survive in New York where I could have a lease.*" *Id.* at 15:23–16:3 (emphasis added). Hidalgo also revealed the level of income, twenty-six thousand dollars per year, which he felt would enable him to rent a one bedroom apartment in New York specifically. *Id.* at 16:7-11.

That Hidalgo became domiciled in New York[1] on April 1, 2013 is reinforced by the extrinsic evidence. For instance, shortly after Hidalgo began routinely visiting the hospital to receive treatment for injuries stemming from his slip-and-fall, he received a Statement of Account from St. Barnabas, detailing his dozen hospital visits between March 14, 2013 and April 4, 2013 and listing his address as 2333 Creston Avenue in the Bronx. *See* Pl.'s Ex. I. The fact that Hidalgo would provide his doctors with a temporary address in the Bronx, rather than his former permanent address in New Jersey, strongly indicates that at this time Hidalgo had abandoned his New Jersey address and was living in New York.

Furthermore, the statement cuts strongly against HP Creston's central argument. Citing the FDNY reports and St. Barnabas release form, HP Creston goes to great length questioning why Hidalgo would provide the paramedics with his New Jersey address if he intended to move to New York. *See* Ras Decl., Ex. D. But this skepticism of Hidalgo's intentions is largely

---

[1] If, in fact, Hidalgo was ever in fact not domiciled in New York. Although the parties do not dispute the issue, it appears to at least be debatable whether Hidalgo ever formally became domiciled in New Jersey.

undercut by the Statement of Account listing his address as being in the Bronx. First, as stated, the forms cited by HP Creston predated the subsequent Statement of Account cited by Hidalgo, and were thus further removed from the filing of this action. Second, those earlier forms were drafted mere days after Hidalgo had left his New Jersey apartment and before he found more permanent housing in New York. The forms from early March 2013 have little bearing on where Hidalgo was domiciled nearly eight months later when he filed this action, particularly in light of similar forms filled out shortly thereafter and listing a New York address.

The remaining evidence is in accord with the conclusion that Hidalgo became domiciled in New York. Hidalgo's W-2 forms for 2013 list his address as 337 112th Street. *See* Pl.'s Ex. D; Hidalgo Dep. 38:9-18. On March 13, 2013 he acquired a New York State benefits card. *See* Pl.'s Ex. J; Hidalgo Dep. 30:3-16. Although he still had his New Jersey identification at this time, he endeavored to cancel it, but was unable to do so because he had not secured his own lease in New York. *See* Hidalgo Dep. 30:3-16. Throughout 2013 and 2014 he received correspondence regarding his debit and credit card at the 337 112th Street address. *See* Pl.'s Ex. H. An August 2014 wage statement from his employer reflects that New York State and City taxes were being deducted from his paycheck. *See id.*, Ex. F. And when he was issued a summons in September 2014 regarding a minor transportation infraction, he again provided 337 112th Street as his address. *See id.*, Ex. G.

The evidence presented paints a very clear picture of events. Hidalgo was living with his Aunt in New York, his home state, while working for an inventory taking company in Manhattan. His employer transferred him to a warehouse in New Jersey for a year, during which time he leased an apartment in Newark. When his employer transferred him back to New York, Hidalgo elected not to renew his lease in New Jersey and returned, with all of his belongings, to

his Aunt's apartment in New York, where he has resided since without any clear intention of leaving the state. Not a single document from after April 1, 2013, the day Hidalgo resumed living at his Aunt's, suggests either that Hidalgo resided in New Jersey or had any intent to return there. Instead, every piece of evidence suggests that Hidalgo picked up in New York where he had left off before being transferred to New Jersey for work. Accordingly, the Court concludes that as of April 1, 2014, Hidalgo was domiciled in New York and that he continued to be domiciled in New York at least through the filing of this action on November 8, 2013. The parties were therefore not diverse on the day the Complaint was filed.

## IV. CONCLUSION

In conclusion, Hidalgo's motion to remand is GRANTED. This resolves Dkt. No. 15. The Clerk of Court is instructed to terminate all open motions for 14-cv-2282 and to remand this case to the state court.

SO ORDERED.

Dated: April 14, 2015
New York, New York

_____
ALISON J. NATHAN
United States District Judge